**Bryan CORRELL, D.D.S., petitioner, Appellant,**

v.

**DISTINCTIVE DENTAL SERVICES, P.A., Respondent.**

**No. C7–98–2251.**

Supreme Court of Minnesota.

March 16, 2000.

---

William J. Egan, William J. Egan & Associates, PLC, Edina, for appellant.

Duane G. Johnson, Duane G. Johnson, P.A., Minneapolis, John D. Hagen, Jr., Attorney at Law, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

In this case we are asked, in the context of a human rights claim arising out of an employment relationship, to resolve an apparent conflict between two statutes. The Minnesota Uniform Arbitration Act (arbitration act) gives binding effect to arbitration provisions in employment agreements.

On the other hand, the Minnesota Human Rights Act (human rights act) provides that the administrative procedures for resolution of claims, which include hearings before an administrative law judge, are exclusive while pending. Relying on the human rights act, Bryan Correll petitioned the district court to stay arbitration of his pending human rights act claim against his past employer, Distinctive Dental Services, P.A. (DDS). The district court granted this stay but the court of appeals reversed. We reverse the court of appeals and affirm the district court's order.

Correll accepted employment as a dentist in DDS's Howard Lake, Minnesota office [1] beginning February 9, 1994. Prior to commencing his employment, Correll entered into an employment agreement which included at paragraph 12 an arbitration provision and at paragraph 17 a noncompetition provision:

> 12. Any controversy or claim arising out of, or relating to this Employment Agreement, or the breach thereof, shall be settled by arbitration in the City of Winsted, State of Minnesota, in accordance with the then governing rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.
>
> * * * *
>
> 17. During the period of employment, Employee shall not engage in any other business activity, directly or indirectly, regardless of whether it is for profit, gain or otherwise that is similar to the business activity of Employer within 7 miles of the offices of Employer.

On September 9, 1994 DDS's CEO Michael Thoennes terminated Correll's employment after learning that Correll's wife accepted a position as a dentist with a competing office in Winsted, Minnesota. Though Correll and Thoennes disagree as to the details of the conversation that occurred that day, they agree that Thoennes ended Correll's employment because of his wife's new position. Thoennes' letter to Correll explaining the termination states that "there is a defacto breach of contract by you since Dr. James Neff has contracted with your wife Mary to perform dental services within the City of Winsted." In support of this conclusion Thoennes cited paragraph 17 of the employment agreement regarding noncompetition.

Correll filed a charge with the Minnesota Department of Human Rights on September 7, 1995, alleging marital status discrimination in violation of Minn.Stat. § 363.03, subd. 1(2)(b) (1998). In 1996 the department made a probable cause determination favorable to Correll and scheduled a hearing.

Shortly before the hearing was to be held, DDS sent Correll a demand for arbitration. Correll filed in district court a petition for a stay of arbitration pursuant to Minn.Stat. § 572.09(b) (1998), arguing that the human rights act precludes arbitration of this dispute. DDS served a cross-motion to compel arbitration, arguing that the arbitration act requires enforcement of the parties' agreement. DDS did not argue that the Federal Arbitration Act (the FAA) compelled arbitration of this dispute and provided no evidence that the employment agreement involved interstate commerce, a threshold requirement under the FAA. See 9 U.S.C. §§ 1–2 (1999). The district court concluded Minn. Stat. § 363.11 (1998) required that arbitration be stayed and therefore granted Correll's motion and denied DDS's cross-motion to compel arbitration.

The court of appeals reversed. See Correll, D.D.S. v. Distinctive Dental Services, P.A., 594 N.W.2d 222 (Minn.App.1999). The appeals court compared the relationship between the arbitration act and the human rights act to the relationship between the FAA and Title VII of the 1964 Civil Rights Act (Title VII), noting that Title VII claims are arbitrable. See Cor-

---

1. DDS has offices in both Howard Lake and Winsted, Minnesota.

*rell, D.D.S.,* 594 N.W.2d at 226. Further, the court considered that the FAA preempts the state human rights act and therefore, where the FAA applies, claims arising under the human rights act are also arbitrable. *See Correll, D.D.S.,* 594 N.W.2d at 224. Because DDS failed to raise the issue of interstate commerce at the district court, the court of appeals did not address the outcome of this claim under the FAA. *See Correll, D.D.S.,* 594 N.W.2d at 224–25. Nonetheless, the court concluded that distinguishing between arbitration agreements based on whether they involve interstate commerce and thus are subject to the FAA would lead to confusion. *See Correll, D.D.S.,* 594 N.W.2d at 227. The court concluded that the human rights act does not invalidate the arbitration provision in the employment agreement and the agreement is enforceable. *See Correll, D.D.S.,* 594 N.W.2d at 225.

## I.

■■■ We begin by noting that an agreement to arbitrate a statutory claim is enforceable only if (1) the agreement encompasses the statutory issues and (2) "legal constraints external to the parties' agreement" do not preclude arbitration of the claim. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). There is no dispute that the agreement encompasses a claim of discrimination arising out of the employment relationship. Thus, the issue presented by this appeal is whether an additional "legal constraint," specifically, section 363.11 of the human rights act, renders this claim exempt from resolution through arbitration. This question of statutory construction is a legal issue that we review de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

The legislature enacted the human rights act in 1955 "to secure for persons in this state, freedom from discrimination" in employment, housing, public accommodations, public services and education. Minn.Stat. § 363.12, subd. 1 (1998). The act protects against various forms of discrimination based on race, color, creed, religion, national origin, sex, marital status, disability, status with regard to public assistance, familial status, sexual orientation and age. *See id.* The act "shall be construed liberally for the accomplishment of the purposes thereof." Minn.Stat. § 363.11 (1998).

The act sets out a procedure for resolving and adjudicating claims brought under it. A claimant may bring a civil action or file a charge with the commissioner of the department. *See* Minn.Stat. §§ 363.06, subd. 1 (1998); 363.14, subd. 1(a) (1998). Once the department makes a finding of probable cause, the department may attempt to resolve the dispute through conciliation or issue a complaint and set the matter on for a hearing. *See* Minn.Stat. § 363.06, subd. 4 (1998). The contested case hearing is conducted by an administrative law judge, whose findings of fact and conclusions of law are binding on all parties to the proceeding. *See* Minn.Stat. § 363.071, subd. 1 (1998). The commissioner or a person aggrieved by a final decision may seek judicial review pursuant to Minn.Stat. § 14.63 (1998).

Correll argues that section 363.11 of the human rights act precludes arbitration of his claim. That section provides that the procedures contained in the human rights act are exclusive while pending:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this chapter shall be deemed to repeal any of the provisions of the civil rights laws or of any other law of this state relating to discrimination because of * * * marital status * * *; *but, as to acts declared unfair by section 363.03, the procedure herein provided shall, while pending, be exclusive.*

Minn.Stat. § 363.11 (1998) (emphasis added).

The human rights act specifically allows arbitration in only two circumstances. First, the act permits arbitration of disputes prior to filing a charge or bringing suit under the act. *See* Minn.Stat. § 363.06, subd. 3 (1998). Second, the act allows arbitration of disputes prior to the department's probable cause determination where the commissioner sanctions alternative dispute resolution. *See* Minn. Stat. § 363.06, subd. 3b (1998). Because Correll had already filed a charge with the department, which made a probable cause determination and set the matter for hearing before the arbitration demand was made, neither of these circumstances is present in this case. Thus, on its face the act appears to preclude arbitration at this stage of the administrative proceedings.

DDS argues that the exclusive procedure provision, read in context, means only that a claimant may not proceed under other civil rights laws while his or her human rights act claim is pending. DDS emphasizes that "[g]eneral words are construed to be restricted in their meaning by preceding particular words." Minn.Stat. § 645.08(3) (1998). The clause preceding the exclusive procedure provision reads, "Nothing contained in this chapter shall be deemed to repeal any of the provisions of the civil rights laws or of any other law of this state relating to discrimination * * *." Minn.Stat. § 363.11 (1998). While we of course look to context to determine legislative intent, the canon DDS cites is limited to "words" qualified by other "words," not entire clauses restricted in their meaning by previous clauses. In addition, the exclusive procedure clause is hardly general, as it addresses only acts declared unfair by the human rights act, and the preceding clause is hardly specific, as it broadly preserves the vitality of other civil rights and anti-discrimination laws.

The conclusion that the exclusive procedure provision precludes arbitration in this context is not inconsistent with our previous opinions addressing the provision. In *Williams v. St. Paul Ramsey Medical Center, Inc.* we interpreted the provision as precluding a claimant proceeding under the human rights act from pursuing an additional remedy in the same suit. 551 N.W.2d 483 (Minn.1996). Williams sued her employer in district court for sexual harassment and reprisal in violation of the human rights act and retaliation in violation of the Whistleblower Act. *See Williams*, 551 N.W.2d at 484. The district court granted the employer summary judgment on the Whistleblower Act claim pursuant to section 363.11. *See Williams*, 551 N.W.2d at 484. Affirming the district court's order, we characterized section 363.11 as an "exclusive remedy provision" and held it "operates as a bar to the separate maintenance of this claim under the Whistleblower Act." *Williams*, 551 N.W.2d at 485–86. In addition to supporting the holding in *Williams*, the phrase "the procedure herein provided" in the statute amply supports our conclusion that section 363.11 extends to issues of forum. Though a claimant's remedies are limited to those set forth by the human rights act, a claimant, having proceeded under the act, is entitled to a forum described in the act.

■ This analysis is also not inconsistent with our decision in *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790 (Minn.1995). There we held the human rights act did not preclude compulsory arbitration of the plaintiff's claim pursuant to an employment agreement because the agreement was within the scope of the FAA and the FAA preempts the human rights act. *See Johnson*, 530 N.W.2d at 803–04. We stated in dicta, however, that section 363.031 [2]

**2.** Minnesota Statutes § 363.031, subd. 1 (1998) provides:

Any provision, whether oral or written, of a lease, contract, or other agreement or instrument, which purports to be a waiver by an individual of any right or remedy provided in this chapter is contrary to public policy and void if the waiver or release purports to waive claims arising out of acts

of the human rights act "voids agreements that purport to waive the right to a judicial forum." *Johnson,* 530 N.W.2d at 803. Consistent with that determination, we conclude that the human rights act provides an exclusive method of resolving claims under the act.

## II.

DDS argues that Minn.Stat. § 572.08 (1998) prevails over section 363.11 of the human rights act and allows arbitration of this dispute. Section 572.08 of the arbitration act renders enforceable all written agreements to arbitrate except those that are revocable based on general principles of contract law:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. * * * [S]ections 572.08 to 572.30 also apply to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement.

Minn.Stat. § 572.08 (1998). The purpose of the arbitration act is to provide an efficient and relatively inexpensive mechanism for resolving disputes. *See Eric A. Carlstrom Const. Co. v. Independent Sch. Dist. No. 77,* 256 N.W.2d 479, 483 (Minn. 1977).

The employment agreement between Correll and DDS falls within the scope of section 572.08. It is a written agreement to arbitrate between an employer and an employee and neither Correll nor DDS contend that any defect of contract formation prevents enforcement of the agreement. Standing alone, the arbitration act would require arbitration of this dispute.

or practices which occur after the execution

## III.

Although section 363.11 of the human rights act and section 572.08 of the arbitration act are unambiguous when considered separately, the relationship between the two sections is less clear and will determine whether Correll's claim is subject to arbitration. When interpreting a statute, our role is to give effect to the intent of the legislature. *See Current Tech. Concepts, Inc. v. Irie Enter., Inc.,* 530 N.W.2d 539, 543 (Minn.1995). If the statutory language is clear, we rely on its plain meaning. *See Green Giant Co. v. Commissioner of Revenue,* 534 N.W.2d 710, 712 (Minn.1995). If, on the other hand, the statutory scheme is ambiguous, we apply the rules of statutory construction. *See Current Tech. Concepts, Inc.,* 530 N.W.2d at 543.

Because the arbitration act and the exclusive procedure provision of the human rights act lead to opposite conclusions, as applied here the provisions are not reconcilable. The legislature has adopted guidelines for interpreting irreconcilable statutory provisions, and those guidelines instruct that specific provisions prevail over general provisions:

> When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Minn.Stat. § 645.26, subd. 1 (1998); *see also Nathan v. St. Paul Mut. Ins. Co.,* 243 Minn. 430, 439, 68 N.W.2d 385, 391 (1955) (concluding where two insurance statutes conflicted, one applicable to multiple forms of insurance and the other only to fire

of the waiver or release.

insurance, fire insurance statute prevailed).

Section 572.08 makes enforceable all written agreements to arbitrate that are not unenforceable for reasons applicable to any contract. In contrast, section 363.11 applies only to human rights act claims that are pending and do not fall into either of the two situations in which arbitration is permitted under the act. Section 363.11 is a narrow exception to the general rule that agreements to arbitrate are enforceable. Moreover, while the arbitration act was enacted in 1957, two years after section 363.11 of the human rights act, neither the arbitration act nor its legislative history suggest the legislature intended it would prevail over the human rights act. Under this canon, the exclusive procedure provision prevails over the arbitration act.

DDS relies on a different canon of statutory construction, one that instructs that the later enacted of two irreconcilable statutes prevails. *See* Minn.Stat. § 645.26, subd. 4 (1998).[3] Though the human rights act preceded the arbitration act, subsequent amendments to the human rights act specifically addressed the issue of alternative dispute resolution, which includes arbitration. *See* Act of April 26, 1984, ch. 567, § 2, 1984 Minn. Laws 1092 (codified at Minn.Stat. § 363.06, subd. 3); Act of May 19, 1997, ch. 182, § 1, 1997 Minn. Laws 1239 (codified at Minn.Stat. § 363.06, subd. 3b). These amendments demonstrate that the legislature weighed the policies underlying the arbitration act in revising the human rights act and provided for arbitration only in specific circumstances. For this reason, we find unpersuasive DDS's argument that the arbitration act should prevail as later in time than the human rights act.

DDS raises various implications of concluding that the exclusive procedure provision prevails over the arbitration act but none of these arguments outweigh the leg-

islative intent expressed in section 363.11. DDS argues that we should, as the court of appeals did, use the federal courts' analysis of Title VII and the FAA as a guide when analyzing the relationship between the human rights act and the arbitration act. *See Correll, D.D.S.,* 594 N.W.2d at 226. In *Gilmer v. Interstate/Johnson Lane Corp.,* a case addressing the Age Discrimination in Employment Act, the Supreme Court held that an agreement to arbitrate in a New York Stock Exchange registration application was enforceable under the FAA. 500 U.S. 20, 26–35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The court explained, "Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* at 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346, 87 L.Ed.2d 444). Following *Gilmer,* almost all federal circuits extended this holding to Title VII claims. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 10 (1st Cir.1999).

A significant difference exists, however, between Title VII and the human rights act. Title VII does not contain an exclusive procedure provision similar to section 363.11. *See* 42 U.S.C. §§ 2000e – 2000e–17 (1999); *cf. Danz v. Jones,* 263 N.W.2d 395, 398–99 (Minn.1978) (noting chapter 363 was modeled after Title VII and looking to Title VII cases for guidance in interpreting chapter 363). The Court in *Gilmer* explained that a statutory claim is not subject to compulsory arbitration where the legislative branch demonstrates an "intention to preclude a waiver of judicial remedies," 500 U.S. at 26, 111 S.Ct. 1647, 114 L.Ed.2d 26, and section 363.11 expresses such an intention regarding

---

**3.** Minnesota Statutes § 645.26, subd. 4 states, "When the provisions of two or more laws passed at different sessions of the legislature

are irreconcilable, the law latest in date of final enactment shall prevail."

pending human rights act claims. The Supreme Court in *Gilmer* implied it may have reached a different result had there been such an expression of legislative intent. 500 U.S. at 26, 111 S.Ct. 1647, 114 L.Ed.2d 26. Thus, we find the comparison to Title VII and the FAA unpersuasive.

DDS also argues that the enforceability of an agreement to arbitrate a human rights act claim should not differ depending on whether the federal or state arbitration act applies.[4] In *Southland Corp. v. Keating*, the Supreme Court explained that an agreement to arbitrate is enforceable under the FAA unless it does not involve interstate commerce or is revocable based on general principles of contract law. 465 U.S. 1, 10–11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). We applied this rule in *Johnson v. Piper Jaffray, Inc.*, holding the FAA preempts the human rights act and enforcing an agreement to arbitrate a human rights act claim pursuant to the FAA. 530 N.W.2d at 803–04.

The court of appeals concluded that practical considerations demand the same result as to whether a human rights act claim is subject to arbitration regardless of the applicability of the FAA. *See Correll, D.D.S.,* 594 N.W.2d at 226–27. The court of appeals was concerned with creating two classes of human rights act claims – claims involving interstate commerce arbitrable under the FAA and claims not involving interstate commerce and thus not arbitrable. *See Correll, D.D.S.,* 594 N.W.2d at 227. The court noted that confusion may arise from this distinction. *See id.*

■ The crux of this issue is whether such practical considerations outweigh the legislature's intent to preclude arbitration of pending human rights act claims. The legislature enacted the human rights act prior to our decision in *Johnson v. Piper Jaffray, Inc.* and thus may not have anticipated the confusion foreseen by the court

of appeals. However, it is for the legislature, rather than this court, to weigh the competing policies at issue and determine the appropriate balance. *See Koehnen v. Dufuor,* 590 N.W.2d 107, 113 (Minn.1999). We will not usurp the legislature's proper role.

We hold that Correll is entitled to a stay of arbitration because section 363.11 of the human rights act precludes arbitration of his pending human rights act claim.

Reversed.

---

4. As DDS did not raise the applicability of the FAA at the district court we will not consider this issue on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).